OPINION
Jerome Werner, plaintiff-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV-330494, in which a jury awarded him $2,074.30 in damages for injuries sustained in a motor vehicle accident involving a car driven by defendant-appellee Scott McAbier. Werner assigns two errors for this court's review. Ken McKinnon has filed a separate appeal from the jury's $3,429.30 damage award to her for injuries sustained in the same accident. McKinnon assigns eight errors for our review.
Jerome Werner's appeal is not well-taken. Ken McKinnon's is well-taken with respect to the trial court's erroneous failure to award her the expenses incurred in the videotaping and playback of the deposition of Dr. Albainy and the court's erroneous failure to submit her proposed interrogatory to the jury. In all other respects, McKinnon's appeal is not well-taken.
On July 23, 1995, a car driven by McAlbier hydroplaned on a rain-covered roadway and rear-ended a stopped car driven by Bonnie Pascuta. Jerome Werner and Ken McKinnon were both passengers in Pascuta's car. As a result of the collision, Werner sustained injuries to his neck and back. McKinnon suffered an acute cervical strain and an acute lumbar strain.
On December 16, 1996, Ken McKinnon and another passenger in the car, Mark Whitely, filed a negligence action (CV-320742) against McAbier, Pascuta's insurance company (Grange Insurance) and McAbier's insurance company (Allstate Insurance) seeking damages for injuries sustained in the accident. McKinnon and Whitely also brought underinsured motorist claims against Grange and Allstate. Grange Insurance filed a cross claim against Allstate and McAbier for indemnification.
On February 13, 1997, Werner filed a separate action (CV-330494) against McAbier for his injuries. On May 23, 1997, the two cases were consolidated. On July 31, 1997, the plaintiffs voluntarily dismissed their claims against Grange Insurance Company.
On November 24, 1997, the trial court referred the case to arbitration. The arbitrator found in favor of Ken McKinnon in the amount of $6,000, in favor of Mark Whitley in the amount of $2,250, and in favor of Jerome Werner in the amount of $12,500. The arbitrator also found in favor of Allstate on McKinnon's underinsured motorist claim.
On February 26, 1998, McAbier appealed the arbitration decision to the common pleas court and requested a trial de novo. On July 14, 1998, McKinnon, Whitley, and Werner filed a notice of voluntarily dismissal of their claims against Allstate without prejudice. The case went to trial on July 23, 1998. On July 27, 1998, the jury returned a verdict of $2,074 in favor of Werner and $3,429.30 in favor of McKinnon.
Werner and McKinnon both filed motions under Civ.R. 59 for a new trial, or in the alternative, for judgment notwithstanding the verdict. McKinnon also filed a motion for prejudgment interest and a motion to tax additional costs. On August 26, 1998, the trial court denied all of the motions.
On September 10, 1998, Werner filed a timely notice of appeal from the jury verdict and the denial of his motion for a new trial. On September 17, 1998, McKinnon filed a timely notice of appeal from the jury verdict and the denial of her post-judgment motions.[1]
Jerome Werner's first and second assignments of error along with Ken McKinnon's first and third assignments of error all share a common basis in law and fact and shall be considered simultaneously.
Jerome Werner's first assignment of error states:
 I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A NEW TRIAL.
Jerome Werner's second assignment of error states:
 II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
Ken McKinnon's first assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED PLAINTIFF-APPELLANT KERI McKINNON'S MOTION FOR A DIRECTED VERDICT ON THE MEDICAL BILLS AND PROXIMATE CAUSE.
Ken McKinnon's third assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED PLAINTIFF-APPELLANT KERI McKINNON'S RULE 59 MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE GROUNDS THAT THE JURY VERDICT AND JUDGMENT THEREON WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The standard for granting a motion for judgment notwithstanding the verdict or a motion for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a Civ.R. 50(A) motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt LaundryCo. (1998), 81 Ohio St.3d 677, 679, citing Wagner v. RocheLaboratories (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, fn. 2, citing Gladon v. Greater Cleveland Regional Transit Auth.
(1996), 75 Ohio St.3d 312, 318-319, 662 N.E.2d 287, 294; andPosin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271,275, 74 Ohio Op.2d 427, 430, 344 N.E.2d 334, 338. See, also,Baughman v. Krebs (Dec. 10, 1998), Cuyahoga App. No. 73832, unreported.
Under Civ.R. 50(A)(4), a motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the non-moving party. Wagner v. Midwestern Indemnity
(1998), 83 Ohio St.3d 287, 294 699 N.E.2d 507, 513.
A motion for a directed verdict raises the legal question of whether the evidence presented was legally sufficient to take the case to the jury. Id., citing Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255. See, also,Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440,445 659 N.E.2d 1242, 1247. When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence or the credibility of the witnesses. Texler at 679. "If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." Id.
(Citations omitted.)
Jerome Werner argues that his motion for a new trial should have been granted because the jury's award of damages was inadequate. He argues that, because he presented uncontraverted evidence of $4,415.00 in special damages, the jury's award of $2,074.30 was erroneous. However, a review of the record reveals that McAbier agreed that Werner incurred medical bills totaling $1,293.30, but challenged the rest of the medical expenses as being unrelated to the automobile accident. McAbier elicited testimony that, at the time of the accident, Werner was still seeing Dr. Fiorini for treatment of injuries sustained in a 1993 workplace fall and had already scheduled future appointments with Dr. Fiorini. After considering this testimony, we conclude that reasonable minds could reach different conclusions as to whether the Fiorini charges were for treatment of injuries caused by the automobile accident. Accordingly, the trial court properly denied Werner's motions for a new trial, directed verdict or judgment notwithstanding the verdict.
We also reject Werner's argument that, because McAbier failed to produce expert testimony to contradict Dr. Fiorini's testimony, the jury was not permitted to award a damage amount less than that established by Dr. Fiorini's testimony. Once a plaintiff establishes a prima facie case of negligence, the opposing party may counter by either cross-examining the plaintiff's expert, producing contradictory testimony from another expert, or presenting expert testimony which "sets forth an alternative explanation for the circumstances at issue."Rechenbach v. Haftkowycz (1995), 100 Ohio App.3d 484, 492,654 N.E.2d 374, 379, discretionary appeal not allowed (1995),72 Ohio St.3d 1530, 649 N.E.2d 839, citing Stinson v. England (1994), 69 Ohio St.3d 451,455-456, 633 N.E.2d 532, 537. In this case, McAbier contested Dr. Fiorini's testimony through his cross-examination, thereby creating a jury question as to whether Dr. Fiorini's charges were for treatment of injuries sustained by Werner in the auto accident. Werner's first and second assignments of error are not well taken.
We turn next to McKinnon's argument that the trial court should have directed a verdict in her favor as to the stipulated amount of medical bills she incurred as a result of the accident. We agree with McKinnon that there was no dispute between the parties as to the amount of her medical bills. However, the jury ultimately awarded her the total amount of the stipulated medical bills. Consequently, she has not demonstrated any prejudice resulting from the court's failure to grant a directed verdict in her favor.
Ken McKinnon's second assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO GIVE THE SPECIAL INTERROGATORY LISTING PAST PAIN AND SUFFERING AND MEDICAL BILLS.
McKinnon sought to submit the following interrogatory to the jury:
 What are the amounts of damages, if any, you find by a preponderance of the evidence were incurred by the plaintiff, Ken C. McKinnon as a proximate result of this collision?
Civ.R. 49(B) provides "the court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument." Interrogatories test the correctness of the jury's verdict by ascertaining the jury's assessment of the evidence presented at trial. Srail v. RJF Int'l Corp. (1998),126 Ohio App.3d 689, 700, 711 N.E.2d 265, 272, citing CincinnatiRiverfront Coliseum, Inc. v. McNulty Co. (1986), 28 Ohio St.3d 333,337, 504 N.E.2d 415, 418. Interrogatories are proper if they raise determinative issues — those "which when decided will definitely settle the entire controversy between or among the parties, so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury." Costa v.Hardee's Food Sys. (1998), Warren App. No. CA97-03-022, unreported, certiorari denied (1998), 82 Ohio St.3d 1415,694 N.E.2d 77, citing Ziegler v. Wendel Poultry, Inc. (1993),67 Ohio St.3d 10, 15, 615 N.E.2d 1022,1028, overruled on other grounds by Fidelholtz v. Peller (1998),81 Ohio St.3d 197, 690 N.E.2d 502 and quoting Miller v. McAllister (1959), 169 Ohio St. 487, 494,160 N.E. 231, 237.
The proposed interrogatory called for the jury to separately state the dollar amount of damages awarded for past medical expenses, past pain and suffering, and past loss of pleasure due to McKinnon's inability to fully perform her usual duties. InFantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601,618, 597 N.E.2d 474, 486, the Ohio Supreme Court stated that setting forth "loss of enjoyment of life" as a separate element of damages may result in a duplication of damages where the jury has included "loss of enjoyment of life" within the category of pain and suffering or the permanency of the disability. To avoid such a result, the Fantozzi court held that, in such cases, the jury should be instructed that "if it awards damages for loss of ability to perform usual activities (which will also encompass the permanency of the disability suffered), the jury must not award additional damages for that same loss when considering any other element of damages, such as physical and mental pain and suffering, as such additional award would be duplicative." Id.
 Fantozzi is distinguishable from the case before us in that McKinnon made no claim of permanent disability resulting from her injuries. Accordingly, the absence of the Fantozzi language did not render the proposed interrogatory legally objectionable. Furthermore, the proposed interrogatory involved a determinative issue — the amount of damages to be awarded — and was therefore a proper interrogatory. As such, it should have been submitted to the jury. The trial court's failure to submit the proposed interrogatory was prejudicial to the appellant because, without such a damage allocation, it is impossible to determine whether the jury's award included any damages for pain and suffering. Accordingly, we find McKinnon's second assignment of error to be well-taken and hereby remand the case to the trial court for a redetermination of the amount of damages to be awarded to McKinnon.
Ken McKinnon's fourth assignment of error states:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Chegan v. AAAA Continental Heating (Nov. 24, 1999), Cuyahoga App. No. 75190, unreported, citing C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. In determining whether the trial court's judgment is against the manifest weight of the evidence, a reviewing court must presume that the findings of the trier-of-fact are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Chegan; Wolfson v. Euclid Ave. Assocs (Nov. 10, 1999), Cuyahoga App. No. 75195, unreported, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, this court must give it the interpretation consistent with the trial court's judgment. Nelson v. Tipton (Nov. 18, 1999), Franklin App. No. 99AP-277, unreported, citing Cent. Motors Corp. v. PepperPike (1995), 73 Ohio St.3d 581, 584, 653 N.E.2d 639, 642, reconsideration denied (1995), 74 Ohio St.3d 1423.
McKinnon argues the jury's verdict was against the manifest weight of the evidence because it failed to include damages for pain and suffering. Damage awards for the exact amount of medical bills for injuries involving pain and suffering, without any award for pain and suffering, have been held to be against the manifest weight of the evidence. Vieira v. Addison (Aug. 27, 1999), Lake App. No. 98-L-054, unreported, citing Farkas v. Detar
(1998), 126 Ohio App.3d 795, 711 N.E.2d 703; Boldt v. Kramer, 1999 Ohio App. LEXIS 2140 (May 14, 1999), Hamilton App. No. C-980235, unreported; Iames v. Murphy (1995), 106 Ohio App.3d 627,666 N.E.2d 1147; Slivka v. C.W. Transport, Inc. (1988),49 Ohio App.3d 79, 550 N.E.2d 196. McKinnon cites Sutherin v. Dimora
(Feb. 26, 1998), Cuyahoga App. No. 72351, unreported in which this court reversed a jury verdict which awarded medical expenses to an injured plaintiff without an accompanying award of damages for pain and suffering. However, in Baughman v. Krebs (Dec. 10. 1998), Cuyahoga App. No. 73832, unreported, this court held that "[i]t does not follow that in a matter wherein a jury awards damages for medicals and lost wages that automatically an award for pain and suffering must follow. Evidence relative to pain and suffering in damage evaluations is within the province of the fact-finder."
In Neal v. Blair (June 10, 1999), Lawrence App. No. 98CA37, unreported, the court upheld a jury verdict which equaled the exact sum of the plaintiff's medical expenses.
 Indeed, the jury's verdict awarded the appellants almost the exact sum of medical and chiropractic expenses, but no more. However, we do not view the award as conclusive evidence that the jury failed to consider pain and suffering and cannot conclude that the jury's award is unsupported by the record. Through presentation of its own expert testimony and cross-examination of the appellants' doctors and chiropractors, the appellee disputed the severity of the appellants' injuries and whether the accident in question proximately caused all of the appellants' medical and psychological problems. Indeed, many of the treatments administered by the various doctors and chiropractors depended upon the appellants' subjective complaints of pain. The jury may have chosen to disbelieve the appellants, as well as their doctors and chiropractors, concerning the extent of their injuries. See Leslie v. Briceley, 1997 Ohio App. LEXIS 6057 (Dec. 31, 1997), Washington App. No. 97CA10, unreported; Evans v. Moore, 1993 Ohio App. LEXIS 5580 (Nov. 15, 1993), Scioto App. No. 2103, unreported; Armbrister v. Thomas, 1991 Ohio App. LEXIS 5781 (Nov. 21, 1991), Scioto App. No. 90CA1958, unreported.
In this case, the jury may well have disbelieved McKinnon's testimony about the extent of her injuries. Although she described the impact of the crash as severe, photographs of McAbier's car show little damage. McAbier testified that, at the time of the collision, he was traveling approximately five miles per hour and that no one in his car was injured. McKinnon also admitted that she continued to work full-time after the crash and missed only a "minimal" amount of work.
A damage award may not be set aside as inadequate and against the manifest weight of the evidence unless a reviewing court determines that the verdict is "so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." Warwick v. Mills (Apr. 24, 1998), Montgomery App. No. 16609, unreported, citing Bailey v. Allberry (1993),88 Ohio App.3d 432, 435, 624 N.E.2d 279. Under the circumstance of this case, we are unable to conclude that the jury's damage award was against the manifest weight of the evidence. McKinnon's fourth assignment of error is not well taken.
Ken McKinnon's fifth assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING DEFENDANT-APPELLEE'S POST TRIAL MOTION FOR A PROTECTIVE ORDER THEREBY DENYING APPELLANT AN OPPORTUNITY TO DEPOSE DEFENDANT'S INSURER'S ADJUSTER AND REVIEW THE CLAIMS FILE.
Civ.R. 26(C) authorizes the trial court to issue a protective order where necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In deciding whether to grant a protective order, the trial court must "balance the competing interests to be served by allowing discovery to proceed against the harm which may result."Alpha Bens. Agency, Inc. v. King Ins. Agency (Sept. 2, 1999), Cuyahoga App. No. 74623, unreported, citing Arnold v. Am. Natl.Red Cross (1994), 93 Ohio App.3d 564, 576, 639 N.E.2d 484, 491. The trial court's decision about whether to grant a motion for a protective order must be affirmed unless the trial court is determined to have abused its discretion. Id., citing State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469,692 N.E.2d 198, 201.
Citing Moskovitz v. Mt. Sinai Medical Center (1994), 69 Ohio St.3d 638,635 N.E.2d 331, McKinnon argues that neither the attorney-client privilege nor the work-product exception precludes discovery of the contents of an insurer's claims file. However, in his request for a protective order, McAbier did not argue that the file was privileged, rather that disclosure of the file was unnecessary and would unduly burden and harass claims adjuster Ann Simpson. We find no evidence that the trial court abused its discretion in granting the protective order. McKinnon's fifth assignment of error is not well taken.
Ken McKinnon's sixth assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING ON MOTION FOR PREJUDGMENT INTEREST BEFORE THE CLAIMS FILE WAS RECEIVED BY APPELLANT.
On August 4, 1998, McKinnon filed her Motion for Award of Prejudgment Interest and Request for Hearing and Discovery. On that same date, she filed a Notice of Post-Trial Deposition of Allstate Insurance Adjuster Ann Simpson in which she stated that "Ms. Simpson is directed to bring with her the Allstate Insurance Company file in its entirety." However, at no time during the pendency of the motion for prejudgment interest did McKinnon file a formal discovery request for the claims file. This case differs from Shaw v. Toyotomi America, Inc. (Sept. 26, 1996), Marion App. No. 9-96-17, unreported, the case cited by McKinnon in support of this assignment of error. In Shaw, the appellant served a discovery request for production of the claims file along with the motion for prejudgment interest.
A party seeking access to the insurer's claims file must make a request for the file under the discovery provisions of the civil rules. Cotterman v. Cleveland Elec. Illum. Co. (1987), 34 Ohio St.3d 48,517 N.E.2d 536, paragraph three of the syllabus. See, also, State Farm Mut. Auto. Ins. Co. v. Reinhart (April 12, 1995), Seneca App. Nos. 13-94-38, 13-94-39, unreported.
Because McKinnon did not file a formal discovery request, Allstate was under no obligation to produce its claims file and the trial court did not err in proceeding to rule on the motion for prejudgment interest. McKinnon's sixth assignment of error is not well-taken.
Ken McKinnon's seventh assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING PLAINTIFF-APPELLANT KERI McKINNON'S MOTION FOR AN AWARD OF PREJUDGMENT INTEREST AGAINST DEFENDANT-APPELLEE SCOTT McABIER AND REQUEST FOR HEARING AND DISCOVERY.
R.C. 1343.03(C) provides for an award of prejudgment interest where "the court determines at a hearing held subsequent to the verdict or decision in the civil action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
McKinnon argues the trial court erred in failing to hold an evidentiary hearing on her motion for prejudgment interest. While R.C. 1343.03(C) does require the trial court to hold a hearing on a motion for prejudgment interest based upon a party's alleged failure to make a good faith settlement offer, the trial court has the discretion to decline to convene a hearing if it appears no award is likely. Leatherman v. Wingard (Dec. 4, 1998), Lucas App. No. L-98-1198, unreported, citing Novak v. Lee (1991),74 Ohio App.3d 623, 631, 600 N.E.2d 260, 266. See, also, PhysiciansDiagnostic Imaging v. Grange Ins. Co. (Sept. 24, 1998), Cuyahoga App. No. 73088, citing Fazio v. Meridian Ins. Co., (Apr. 9, 1998), Cuyahoga App. No. 73320, unreported ("The requirement for a hearing may be dispensed when the motion for prejudgment interest is obviously not well-taken"); Anderson Transp. Co. v.Keffler Constr. Co. (June 3, 1998), Summit App. No. 18524, unreported.
In support of her motion for prejudgment interest, McKinnon argued that Allstate failed to make a good faith effort to settle the case. McKinnon attached an affidavit from her attorney, Kyle Crane, who averred that Allstate Claims Adjuster Ann Simpson offered $2500 to settle the case and that the same amount was offered on the day of trial by McAbier's attorney Nicholas Fillo. Crane averred that "Defendant refused to even offer the total specials which Defendant himself agreed were incurred as a result of his negligence."
However, when seeking prejudgment interest, the movant must demonstrate both that the opposing party failed to make a good faith effort to settle and that the movant did not fail to make a good faith effort to settle the case. R.C. 1343.03(C). McKinnon makes no mention of any settlement demand or any counteroffer made by McKinnon in response to Allstate's settlement offer. A party's failure to tender a settlement demand has been held to constitute a failure to make a good faith effort to settle the case. LeMaster v. Huntington Nat'l Bank (1995), 107 Ohio App.3d 639,644, 669 N.E.2d 295, 298, discretionary appeal not allowed (1996), 75 Ohio St.3d 1497. See, also, Black v. Bell (1984),20 Ohio App.3d 84, 88, 484 N.E.2d 739, 742-743 ("R.C. 1343.03(C) requires the party seeking prejudgment interest to demonstrate its aggressive prejudgment settlement efforts and its adversary's lack of aggressive prejudgment settlement efforts.") Because McKinnon failed to establish that she made good faith efforts to settle the case, the trial court could reasonably have determined that she was apparently not entitled to an award of prejudgment interest, thereby rendering a hearing unnecessary. McKinnon's seventh assignment of error is not well-taken.
Ken McKinnon's eighth assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT AWARDING COSTS TO APPELLANT.
Civ.R. 54(D) grants trial courts discretion to order that the prevailing party bear all or part of his or her own costs. Stateex rel. Reyna v. Natalucci-Persichetti (1998), 83 Ohio St.3d 194,198, 699 N.E.2d 76, 79, citing Vance v. Roedersheimer (1992),64 Ohio St.3d 552, 555, 597 N.E.2d 153, 156. A trial court is authorized to award costs under Civ.R. 54(D) which provides that unless provided by a statute or by the civil rules, costs are to be awarded to the prevailing party unless the court decides otherwise. Bates v. Ricco (Nov. 18, 1999), Cuyahoga App. No. 74982, unreported.
The assessment of costs is a matter within the discretion of the trial court and, absent an abuse of discretion, the trial court's decision must be upheld. Keaton v. Pike Community Hosp.
(1997), 124 Ohio App.3d 153, 156, 705 N.E.2d 734, 736, citingVance v. Roedersheimer (1992), 64 Ohio St.3d 552, 555,597 N.E.2d 153, 156; Gnepper v. Beegle (1992), 84 Ohio App.3d 259, 263,616 N.E.2d 960, 962-963.
McKinnon sought to recover the following expenses as costs: the filing fee for the complaint, the expenses of the court reporter (for attending and transcribing the deposition of McAbier; transcribing the deposition of McKinnon; attending, transcribing, videotaping, and duplicating the videotape of Dr. Albainy's deposition; playing back the videotaped deposition of Dr. Albainy at trial) and the expense of preparing a blow-up exhibit.
Under C.P.Sup.R. 13(D)(2), the reasonable expense of recording testimony on videotape and the expense of playing the videotape recording at trial shall be allocated as costs under Civ.R. 54. See Bates v. Ricco (Nov. 18, 1999), Cuyahoga App. No. 74982, unreported. Accordingly, McKinnon was entitled to recover the costs of recording deposition of Dr. Albainy and playing the videotape at trial. Under C.P.Sup.R. 13(A)(6), the cost of copying a videotaped deposition (either in the form of a videotape or a written transcript) shall be borne by the party requesting the copy. Consequently, McKinnon is not entitled to recover the costs of duplicating the videotaped deposition of Dr. Albainy. There is no statutory basis for taxing the services of a court reporter as costs under Civ.R. 54(B). Baughman v. Krebs
(Dec. 10, 1998), Cuyahoga App. No. 73832, unreported. See, also,Williamson v. Ameritech Corp. (1998), 81 Ohio St.3d 342,691 N.E.2d 288. Accordingly, McKinnon is not entitled to recover court reporter expenses for attending and transcribing the depositions of McAbier and McKinnon.
The fee for filing the complaint has been held not to be totally recoverable as additional costs. Bates v. Ricco (Nov. 18, 1999), Cuyahoga App. No. 74982, unreported, citing Szarka v.State Auto. Ins. Cos. (Nov. 14, 1996), Cuyahoga App. No. 70469, unreported.
 Pursuant to R.C. 2303.20, the clerk of the common pleas court may charge certain fees associated with the filing of a lawsuit. Where these fees have already been taxed as costs in the court's final order, any attempt to recover those charges over and above the sums charged by the clerk of courts is impermissible.
Id.
In this case, the trial court assessed costs against the defendants in its final journal entry. Pursuant to Bates andSzarka, McKinnon is not entitled to any additional recovery of the filing fee.
Also, McKinnon has presented us with no statutory authority for recovering the expense of preparing a blow-up exhibit as costs. We are unpersuaded by her reliance on State ex rel. Schoener v.Pd. of Cty. Commrs. of Hamilton Cty. (1992), 84 Ohio App.3d 794,619 N.E.2d 2, appeal dismissed (1993), 66 Ohio St.3d 1502,613 N.E.2d 645. In Schoener, the court outlined the two factors to be considered upon when ruling on a motion to tax an expense as a cost — whether the item is a litigating expense or a personal expense and whether the litigating expense was necessary and vital to the litigation. Id. at 803, 619 N.E.2d at 18. The Schoener court determined that the exhibit fees sought to be recovered in that case were necessary and vital litigation expenses. In this case, we are unconvinced that preparing a blow-up exhibit was necessary or vital to McKinnon's case. Accordingly, the trial court properly denied her request to tax the cost of preparing the exhibit as an additional cost.
McKinnon's eighth assignment of error is well-taken only as it pertains to expenses for the costs of videotaping the deposition of Dr. Albainy and playing the videotape at trial. Accordingly, the trial court's denial of the motion to tax additional costs is reversed in part and additional costs are hereby awarded to McKinnon in the amount of $495.00, representing the total of the following expenses incurred in connection with the Albainy deposition: $82.50 for the attendance of the court reporter at the Albainy deposition + $262.50 for the videotape recording of the deposition + $150.00 for the videotape playback of the deposition.
The judgment of the trial court is affirmed in all other respects.
Judgment affirmed in part, reversed in part and remanded for jury determination as to damages only.
It is ordered that appellee and appellants share the costs herein taxed.
The Court finds there were reasonable grounds for these appeals.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCUR.
 TIMOTHY E. McMONAGLE, P.J., CONCURS IN JUDGMENT ONLY.
[1] On September 8, 1999, Mark Whitely dismissed his claims against all defendants with prejudice. On the same date, the case was dismissed with prejudice as to Allstate Insurance Company.